IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| JOHN K. ADAMS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) Case No. 07-cv-0593-MJR-PMF |
| | ) |
| HEALTH PROFESSIONALS, LTD., | ) |
| WEXFORD HEALTH SOURCES, INC., | ) |
| ADRIAN FEINERMAN, | ) |
| and SETH K. OSAFO, | ) |
| | ) |
| Defendants. | ) |

**MEMORANDUM AND ORDER**

**REAGAN, District Judge:**

    A.    <u>Introduction & Procedural Overview</u>

John K. Adams, an inmate in the custody of the Illinois Department of Corrections (IDOC), presents deliberate indifference claims herein. His complaint survived threshold review in December 2008. Prior Orders of this Court dismissed various claims, leaving four remaining Defendants scheduled to proceed to final pretrial conference February 5, 2010 and jury trial March 1, 2010: (1) Health Professionals, Ltd., (2) Wexford Health Sources, Inc., (3) Adrian Feinerman, and (4) Seth Osafo.

Those four Defendants moved for summary judgment on October 5, 2009 and supplemented their supporting memorandum three days later with leave of Court. Represented by counsel, Plaintiff Adams obtained an extension of time to respond thereto and filed a memorandum opposing summary judgment on November 30, 2009. The issues have been thoroughly briefed.

For the reasons stated below, the undersigned District Judge grants in part and denies in part Defendants' motion for summary judgment (Doc. 30).

### B. Applicable Legal Standards

John Adams proceeds herein under 42 U.S.C. § 1983. His claims relate to the conditions of his prison confinement at Pinckneyville Correctional Center and Illinois River Correctional Center. Adams alleges that he suffers from serious medical ailments and that Defendants responded to those serious medical needs with deliberate indifference. Noting that summary judgment is the "put up or shut up moment in a lawsuit" (Doc. 30, p. 12), Defendants maintain that the evidence utterly fails to support any of Adams' allegations, entitling all four of them to judgment on all claims.

Summary judgment is proper where the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. **Fed. R. Civ. P. 56(c).** *Accord Durable Mfg. Co. v. U.S. Department of Labor*, 578 F.3d 497, 501 (7th Cir. 2009); *Twenhafel v. State Auto Prop. and Cas. Ins. Co.*, 581 F.3d 625, 628 (7th Cir. 2009); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986).

In ruling on a summary judgment motion, this Court must construe the facts and draw all reasonable inferences in the light most favorable to the non-moving party. *Tas Distributing Co., Inc. v. Cummins Engine Co., Inc.*, 491 F.3d 625, 630 (7th Cir. 2007); *Reynolds v. Jamison*, 488 F.3d 756, 764 (7th Cir. 2007); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

To survive a summary judgment motion, the nonmovant (here, Plaintiff Adams) must set forth specific facts showing that there is a genuine issue for trial. *Vanasco v. Nat'l-Louis Univ.*, **137 F.3d 962, 965 (7th Cir. 1998).**  Stated another way, the party opposing summary judgment must provide evidence on which the jury could find in his favor. See **Maclin v. SBC Ameritech, 520 F.3d 781, 786 (7th Cir. 2008).**  As the United States Court of Appeals for the Seventh Circuit declared six months ago in *Trade Finance Partners*, **LLC v. AAR Corp., 573 F.3d 401, 406-07 (7th Cir. 2009):**

> To survive summary judgment, "there must be evidence on which the jury could reasonably find for the nonmoving party, ... and the nonmoving party must point to specific facts showing that there is a genuine issue for trial; inferences relying on mere speculation or conjecture will not suffice." *Argyropoulos v. City of Alton*, 539 F.3d 724, 732 (7th Cir. 2008).

Adams claims deliberate indifference by Defendants.  In *Estelle v. Gamble*, **429 U.S. 97 (1976)**, the Supreme Court held that the Eighth Amendment's prohibition against cruel and unusual punishment imposes a duty upon states to provide adequate medical care to inmates.  Failure to provide medical care violates the Eighth Amendment when there is "deliberate indifference" to a substantial risk of harm. *Farmer v. Brennan*, **511 U.S. 825, 834 (1994);** *Sherrod v. Lingle*, **223 F.3d 605, 610 (7th Cir. 2000).**

Deliberate indifference is "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley v. Albers*, **475 U.S. 312, 319 (1986).**  Instead, the plaintiff must establish: (1) his medical condition was objectively serious, and (2) the defendants were subjectively aware of the medical need *and* disregarded an excessive risk to the inmate's health. *Wynn v. Southward*, **251 F.3d 588, 593 (7th Cir. 2001).**

The Seventh Circuit has explained it this way. States have an affirmative duty to provide medical care to their inmates. The upshot of this duty is that deliberate indifference to a prisoner's serious medical needs constitutes the unnecessary and wanton infliction of pain, which violates the Eighth Amendment.

To demonstrate deliberate indifference, a plaintiff must demonstrate an objectively serious medical condition to which a state official was deliberately, i.e., *subjectively*, indifferent. ***Duckworth v. Ahmad*, 532 F.3d 675, 678-79 (7th Cir. 2008). *See also Greeno v. Daley*, 414 F.3d 645, 652-53 (7th Cir. 2005).** In certain circumstances, delays in treating painful non-life-threatening conditions also can support Eighth Amendment claims. ***Johnson v. Doughty*, 433 F.3d 1001, 1017 (7th Cir. 2006), quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1371 (7th Cir. 1997).**

When considering whether an inmate's medical care demonstrates deliberate indifference to his serious medical needs, the Court looks at the inmate's medical care as a whole. ***Gutierrez*, 111 F.3d at 1374.** With respect to medical personnel, the Court will infer deliberate indifference if poor treatment decisions represent a substantial departure from accepted professional judgment. ***Sanville v. McCaughtry*, 266 F.3d 724, 734 (7th Cir. 2001).**

    C.    <u>Analysis</u>

➜    F<small>ACTUAL</small> B<small>ACKGROUND</small>

Adams has been in and out of the IDOC numerous times. He has served his sentences at a variety of facilities, including Stateville Correctional Center, Pontiac Correctional Center, Menard Correctional Center, Big Muddy Correctional Center,

Danville Correctional Center, Western Correctional Center, Logan Correctional Center, Illinois River Correctional Center, and Pinckneyville Correctional Center.  The issues in this case pertain to Adams' confinement at different periods of time at different locations.

Specifically, Adams alleges that he suffered from several "pre-existing debilitating medical conditions and disabilities, that kept him in severe and chronic pain, and that ... required special orthopedic treatment and intensive, ongoing pain management," including a knee replacement, a degenerative bone condition, nerve damage to his left leg, and the fact his left leg was approximately two inches shorter than his right leg (Complaint, Doc. 2, p. 5).  Adams contends that during his incarceration with IDOC, he was subjected to "ongoing and continuous acts of deliberate indifference" that were "generally attributable to" a custom or policy (established or encouraged by Defendants) to deliver only nominal health care to IDOC inmates through private providers at the cheapest possible cost (Doc. 2, p. 6).

➡  **DELIBERATE INDIFFERENCE**

To establish deliberate indifference in the instant case, Adams must show that Defendants knew about and disregarded a serious medical condition posing a risk to his health.  ***Burks v. Raemisch*, 555 F.3d 592, 593-94 (7th Cir. 2009);** ***Duckworth*, 532 F.3d at 679.**  As noted above, Defendants must have actually drawn the inference of a substantial risk of serious harm.  ***See Farmer*, 511 U.S. at 837;** ***Duckworth*, 532 F.3d at 679.  *Accord Dale v. Poston*, 548 F.3d 563, 569 (7th Cir. 2008)("an inmate has no [deliberate indifference] claim 'unless the official knows of and disregards an excessive**

risk to inmate health or safety;'" there must be both a grave risk and actual knowledge by the Defendant of that risk).

Because Adams has targeted treatment decisions, an inference of deliberate indifference will be drawn if the evidence shows a substantial departure from accepted professional judgment, *Sain v. Wood*, 512 F.3d 886, 895 (7th Cir. 2008), or a decision to withhold treatment as a "gratuitous cruelty." *See Walker v. Benjamin*, 293 F.3d 1030, 1040 (7th Cir. 2002). In other words, Defendants must have acted with intentional or criminally reckless disregard when they made treatment decisions regarding Adams.

➜     E<span>VIDENTIARY</span> M<span>ATTERS</span>

The record before this Court is voluminous, and the parties have not been selective in submitting information. After reviewing the exhibits and affidavits, the Court finds it necessary to note that any findings under Rule 56 must be based on documents and testimony having evidentiary quality. F<span>ED</span>. R. C<span>IV</span>. P. 56(e). The undersigned Judge has focused on the evidence that is relevant to the claims and defenses in this case.

➜     D<span>EFENDANT</span> F<span>EINERMAN</span>

Adrian Feinerman is a medical doctor who specializes in internal medicine and has training in orthopedics. As an employee of Wexford Health Sources, Inc.[1], Feinerman worked at Pinckneyville Correctional Center. He was the medical director of that facility, which is designated as a correctional facility for disabled inmates.

---

[1] Wexford Health Sources, Inc. and Health Professionals, Ltd. are vendors of health care services to several IDOC facilities.

Adams' claim against Dr. Feinerman pertains to a period of time beginning in July 2004 and continuing through April 2005. During that period, Adams was confined at Pinckneyville Correctional Center (Pinckneyville). Adams had serious medical needs arising from his history of traumatic injury in a motorcycle accident. Adams' left leg and knee are fused. A rod and several pins connect his left leg bones to his left hip. Adams has "foot drop," characterized by an inability to support his left foot. Adams also has a leg length discrepancy. His left leg is roughly 2 ½ inches shorter in length than his right leg. As a result of these conditions, Adams' ability to walk unassisted is impaired. Adams also has subjective complaints of back pain and other pain.

Shoe lift. In July 2002, before the period in question, Adams was evaluated by a physical therapist. The physical therapist prepared a report which became part of Adams' medical file. A 2-inch shoe lift was recommended, based on the therapist's finding that Adams' leg length disparity altered his gait and aggravated his symptoms of back pain. Adams was released from prison in August 2002. He purchased a shoe lift from Carle Hospital in Champaign, Illinois.

On arrival at Pinckneyville in October 2004, Adams had a lift in his shoe, which may have been the one purchased through Carle Hospital.[2] When Adams learned that this shoe lift was constructed with a metal stave and did not meet prison security

---

[2] Evidence on this point is confusing. For purposes of this motion, the Court infers that Adams purchased but did not receive a shoe lift during his 2004-2005 confinement at Pinckneyville.

-7-

restrictions, he ordered a replacement lift through a prosthetics vendor. Delay in the delivery of the replacement resulted in Adams spending many months walking without a lift in his left shoe.

At some point, Feinerman evaluated Adams' request for a state-issued shoe lift. Feinerman reviewed Adams' medical file and learned about the physical therapist's recommendation in favor of a 2-inch shoe lift. Feinerman declined to order a shoe lift based on his belief that Adams would not be walking long distances or walking on uneven surfaces in the prison environment. At the time, Feinerman was aware that persons who regularly walk with an uncorrected leg length discrepancy can develop spinal or back problems. During this period of confinement, Adams experienced tremendous pain in his back, hip, leg and foot. His symptoms worsened after he walked without a shoe lift.

<u>Leg brace</u>. On August 6, 2004, Feinerman approved Adams' use of an ankle-foot orthotic device or "AFO."

<u>Pain medication</u>. In January 2005, Feinerman admitted Adams to the prison infirmary after Adams said he had too much pain to walk. Feinerman ordered "light" medicines for pain relief and approved a diagnostic test.

In February 2005, Feinerman reviewed the test results. He thought the tests showed normal spinal changes for persons in Adams' age group and did not identify objective support for Adams' subjective complaints of pain. In particular, Feinerman determined that an old fracture was well-healed and would not cause severe pain. He also thought a prior bone infection (osteomyelitis) was not an active problem. Adams was

discharged from the infirmary without pain relief medicine after approximately one week, despite his complaint of immobilizing pain.

On another occasion in 2005, Feinerman evaluated Adams' complaints of severe pain and ordered diagnostic tests. Feinerman did not notify Adams of the test results and did not order pain relief medications.[3] Adams did not see Feinerman again before he was transferred to Pontiac Correctional Center in April 2005.

Physical therapy. On several unknown dates, Feinerman declined to order physical therapy. He recommended self-administered stretching, exercise, and walking. Adams walked to the prison gymnasium and lifted weights; however, these efforts at self-rehabilitation were not successful.

Eggcrate mattress. In August 2004, a doctor evaluated Adams' complaints of sleep issues and denied his request for a special "eggcrate" mattress. The decision was likely based on Feinerman's view that this type of mattress would create a fire hazard in a prison setting. The report generated reflects that Adams had no medical need for the special mattress.

Special use permits. On August 6, 2004, Feinerman approved a medical permit restricting Adams to a low bunk assignment. He also approved a permit giving Adams access to a special exercise yard reserved for physically challenged inmates.

---

[3] The Court has considered information suggesting that Adams was addicted to pain medications in the past. The evidence does not link this aspect of Adams' medical history to Feinerman's treatment decisions in 2004 and 2005.

-9-

Feinerman felt the special yard would present fewer dangers from other inmates.

<u>Referral for consultation</u>.  Feinerman did not refer Adams to an orthopedic specialist for a consultative examination.

Feinerman argues that the evidence could not support a finding that he responded to Adams' serious medical ailments with a sufficiently culpable state of mind. He relies primarily on **Greeno v. Daley, 414 F.3d 645 (7th Cir. 2005)**, in which a failure to pursue further testing for a possible ulcer for 2 years was held to support a deliberate indifference claim.  In particular, the defendants in **Greeno** "doggedly persisted in a course of treatment known to be ineffective."  **Id. at 655.**  Feinerman argues that any incorrect diagnosis or treatment would demonstrate – at worst – negligent conduct.

In response, Adams also relies on **Greeno**, positing that the evidence could support an inference that Feinerman actually knew that he had significant levels of pain and refused to take steps to obtain or provide effective treatment.

The Court is not persuaded that the holding in **Greeno** logically extends to this fact pattern.  In **Greeno**, the defendants banned treatment, gave medicine known to be ineffective, and gave medicine known to aggravate the inmate's condition.  They also refused to approve a diagnostic test (endoscopy) that ultimately led to immediate, successful treatment.  Feinerman did not ban treatment but provided several forms of treatment, including recommended exercises, over-the-counter medicine, a low bunk permit, a physically challenged yard permit, temporary placement in the infirmary, diagnostic tests, and access to an ankle-foot orthotic device.

No facts support a finding that Feinerman refused to approve a test that would have led to a quick diagnosis of Adams' pain and effective treatment. The evidence could support the inference that some of Feinerman's treatment choices (self-regulated exercise, over-the-counter pain medicine) were not effective and may amount to an error in medical judgment. But the evidence considered as a whole does not show deliberate indifference. That is, the materials on file could not support a finding that Feinerman's treatment choices fell far afield of the professional norm for treatment of Adams' ailments or that Feinerman deliberately selected poor treatment choices as a form of gratuitous cruelty. On these facts, Feinerman is entitled to judgment in his favor.[4]

➔   **Defendant Dr. Osafo**

Seth Kwabena Osafo is a medical doctor with a specialty in internal medicine. Osafo served as medical director of the Illinois River Correctional Center from 2004 to 2008. While working at Illinois River, Osafo was an employee of Wexford Health Services. Plaintiff Adams arrived at Illinois River around May 24, 2006, and on several occasions was seen by Dr. Osafo. Osafo argues that his response to Adams' medical ailments does not qualify as deliberate indifference.

Adams' claims against Osafo relates to Adams' confinement at Illinois River between May 24, 2006 and September 5, 2007. During this time, Adams continued to experience symptoms from the leg conditions discussed above and also experienced an

---

[4]   In light of this finding, the Court does not reach the argument that Adams failed to prove a detrimental effect of delay.

inguinal hernia. Adams was discharged from Illinois River (released from IDOC custody) in early September 2007, four months earlier than scheduled.

<u>Shoe lift</u>. Adams had a shoe lift during this aspect of his confinement but it was in poor condition. Osafo evaluated the shoe lift on two occasions. He initially felt that the lift had deteriorated. He participated in a review with the regional medical director. As a result, Adams was approved for an orthotic device evaluation and was fitted for a new shoe lift. When Adams did not receive a new shoe lift, Osafo informed him that Wexford would not pay for the new shoe lift. Osafo again evaluated Adams' shoes in March 2007 and found the shoes to be in good shape.

<u>Leg brace</u>. In July 2007, Osafo evaluated Adams' concerns about the deteriorating condition of his AFO. Osafo decided that the AFO was in disrepair and arranged for members of the prison's maintenance staff to attempt repairs with glue and welding. Those efforts were not successful. Osafo advised Adams that a new leg brace would be ordered if the repairs did not work, but Wexford would not pay the cost.

Eventually, Osafo issued a cane for Adams' use. Adams tried the cane but did not find it helpful. Osafo did not arrange for Adams to be fitted for a new AFO. Two months later, Adams was released. At that time, the AFO was held together by a tiny piece of plastic. A few days later, Adams fell on the street when the AFO broke apart completely.

<u>Pain medication</u>. Osafo evaluated Adams' complaints of pain and had difficulty determining an objective basis for his symptoms. Osafo tried different pain

relief medicines, including ibupropen, Tylenol, Tylenol with codeine, and Neurontin.

<u>Special use permits</u>.  Osafo evaluated Adams' ability to perform daily prison functions and did not identify any deficiencies.  Osafo personally observed Adams walk back and forth from his cell to the dining hall using a crutch.  Because Osafo felt that Adams was not restricted, Osafo did not approve a "slow walk" pass, but he did grant special permission for Adams to be assigned to a cell close to the dining hall.

<u>Surgery</u>.  Around July 2006, Adams suffered an abdominal injury.  Osafo evaluated Adams' condition between November 2006 and August 2007.  Initially, Osafo determined that Adams had a painful inguinal hernia that was small, stable, and not bulging.  A truss or hernia belt was issued to Adams, and he was advised not to lift heavy objects.  This mode of treatment did not work.

In July and August 2007, Osafo reevaluated Adam's complaints.  By that time, Adams' abdominal ailment had worsened considerably.  The hernia was very painful and had descended, enlarged, and was bulging in a grotesque manner, creating a disfiguration.  A nurse attempted, without success, to "reduce" the hernia using pressure.  A warden was concerned or frightened by the way the hernia looked.  Despite these changes, Osafo steadfastly refused to consider Adams as a candidate for hernia repair surgery.  Osafo told Adams that the hernia was reducible, because he was able to push it back in the abdomen with prolonged effort.  He also advised Adams on several occasions that his employer "would not pay" for hernia repair surgery.  When Adams was released in September 2007, the hernia was approximately 12 inches wide and protruded several inches.  Within a few

days after Adams' release, he underwent emergency hernia repair surgery.

A reasonable jury could not infer from these facts that Osafo responded to plaintiff's leg length discrepancy with deliberate indifference. Evidence that Osafo allowed Adams to use a shoe lift and a brace that were in disrepair while attempting some level of repair, replacement, and alternative use of a cane does not permit the inference of deliberate indifference.

But the same cannot be said about Adams' eventual demonstrated need for hernia repair surgery. Construing the facts and inferences in the light most favorable to Adams, the Court concludes that a reasonable jury confronted with this evidence could find that Osafo deliberately or intentionally refused to provide needed medical services.

Osafo argues that Adams is unable to prove that the delay in surgical repair caused a degree of harm. It is true that an action based on a delay in the provision of medical treatment for a painful condition must be supported by verifying medical evidence showing that the condition worsened because of the delay. *See Knight v. Wiseman*, – F.3d –, 2009 WL 4912165, *7 (7th Cir. Dec. 22, 2009)(Action for delay in provision of medical treatment to prisoner "will not lie unless the plaintiff introduces verifying medical evidence that shows his condition worsened because of the delay"). *Accord Grieveson v. Anderson*, 538 F.3d 763, 779 (7th Cir. 2008); *Williams v. Liefer*, 491 F.3d 710, 715 (7th Cir. 2007).

But, as Adams correctly points out, his claim is based on the *denial* of necessary medical services rather than a *delay* in furnishing medical treatment. Verifying

-14-

medical evidence is not required here, because Adams can show that Osafo refused to provide a surgical repair.  Evidence that Adams' abdominal ailment was corrected by a different physician following his release from prison does not convert this from a claim of denial to a claim of delay.

> ➜ **Defendant Wexford Health Sources, Inc. (Wexford) and Defendant Health Professionals, Ltd. (HPL)**

Defendants Wexford and HPL seek judgment in their favor on the basis that they did not adopt any policy or custom to refuse medical services to inmates.  Deliberate indifference by the corporate Defendants may be shown three ways: (1) an express policy that, when enforced, causes a constitutional deprivation; (2) a widespread practice that, although not authorized by written law or express municipal policy, is so permanent and well settled as to constitute a custom or usage with the force of law; or (3) an allegation that the constitutional injury was caused by a person with final policymaking authority." ***Baxter by Baxter v. Vigo County Sch. Corp.*, 26 F.3d 728, 735 (7th Cir. 1994).**

Defendants Osafo and Feinerman have demonstrated that they did not have final policymaking authority when they worked as medical directors.  For a period of time, Feinerman may have had policy making authority in a prior position as president/medical director of HPL.   But there is no correlation between that prior position and the issues in the instant case.

The evidence regarding Wexford's policies and customs is conflicting.  Osafo and Feinerman maintain that there were no rules or directives to control costs or restrict

services. In 2006, Wexford approved guidelines for the repair of inguinal hernias. Those guidelines provide that "urgent surgical surveillance" is required for hernias such as the one Adams experienced. The conflicting evidence consists of Osafo's repeated statements that Wexford would not purchase certain health care services, including hernia repair surgery.

Defendants' argument has merit with respect to **HPL**. No evidence demonstrates that HPL had an express policy of medical deliberate indifference, that HPL had a widespread practice of medical deliberate indifference, or that a person at HPL with final policymaking authority caused the deprivation at issue. HPL is entitled to summary judgment.

By contrast, Adams has presented some evidence suggesting that **Wexford** had an express policy and/or customarily refused to purchase certain health services for inmates. Adams can show that Defendant Osafo made such representations and that Osafo was knowledgeable of Wexford's policies and customary practices due to his position as medical director. While the evidence is disputed, the Court must resolve the conflict in Adams' favor in the context of this summary judgment motion. Accordingly, as to the health care services vendors, the motion for summary judgment merits granting in part (as to HPL) and denial in part (as to Wexford).

D.   Conclusion

Defendants' motion for summary judgment (Doc. No. 30) is GRANTED in part and DENIED in part as follows.

The motion is <u>granted</u> as to **Defendant Feinerman and Defendant HPL on all claims.** No genuine issues of fact remain, and these two Defendants are entitled to judgment as a matter of law. At the close of this case, the Clerk of Court shall enter judgment in favor of Defendant Feinerman and Defendant Wexford and against Plaintiff Adams on all claims.

The motion is <u>further granted</u> as to **Defendant Osafo and Defendant Wexford** on Adams' claims relating to the leg ailments. Again, as to these claims, no genuine issues of fact remain and Defendants are entitled to judgment as a matter of law. Thus, at the close of the case, the Clerk of Court shall enter judgment in favor of Defendants Osafo and Wexford and against Plaintiff Adams on the all claims relating to Adams' leg ailment – i.e., on all claims *other than* the deliberate indifference claims relating to the treatment of Adams' hernia in July and August 2007.

Therefore, the motion is <u>denied</u> **only** as to Adams' claim of deliberate indifference relating to Dr. Osafo and Wexford's treatment of his serious medical need for hernia repair surgery in July and August 2007. Those claims remain for trial. Any future pleadings (including the Final Pretrial Order) shall include the style of the case as ***John K. Adams, Plaintiff, vs. Seth K. Osafo and Wexford Health Sources, Inc., Defendants***.

The final pretrial conference will proceed at **10:00 am on February 5, 2010** in East St. Louis before the undersigned Judge. Counsel shall email a <u>signed</u>, joint final pretrial order to the undersigned's proposed document inbox no later than 3:00 pm on Wednesday, February 3, 2010 at MJRpd@ilsd.uscourts.gov.

Important information regarding exhibit lists, witness lists, and other pretrial matters is contained on the undersigned Judge's web page, part of the District Court website at www.ilsd.uscourts.gov.

This case is set for trial at 9:00 a.m. on **Monday, March 1, 2010.** Proposed jury instructions shall be provided to the undersigned Judge's law clerk (not e-filed but provided in paper form via mail or hand-delivery marked "ATTN: Sheila" and using the format described on the web page) no later than **4 p.m. on February 24, 2010**. The undersigned Judge uses approved pattern jury instructions – 7th Circuit, Civil – whenever possible.

IT IS SO ORDERED.

DATED February 1, 2010.

s/ Michael J. Reagan
MICHAEL J. REAGAN
UNITED STATES DISTRICT JUDGE